Good morning, Illinois Appellate Court First District Court is now in session. The second division, the Honorable Justice Margaret S. McBride presiding. Case number 22-1266. People versus Devin Kuykendoll. Good morning. My name is Margaret McBride and along with Justice Ellis and Justice Copps, we will be presiding over this oral this morning. Before we begin, and I have both attorneys introduce themselves, we will be allowing you each side about 10 minutes for your oral argument uninterrupted. From that, the defendant, Helen, can save some time for rebuttal. And after counsel has presented the 10 minutes or less, the justices will then have time to ask questions. So that that'll be the procedure. And so with that, I would ask counsel for Helen to identify yourself for the record. Good morning for the record. Veronica Shaheen for appellant Devin Kuykendoll from the Office of the State Appellate Defender. Good morning, Ms. Shaheen. And for the appellee. Good morning. Assistant State's Attorney Whitney Bond on behalf of the people. Good morning, Ms. Bond. All right. Both of you are ready to proceed. Good morning again, then. And Ms. Shaheen, you may proceed. Mr. Kuykendoll was convicted under two subsections of the aggravated unlawful use of a weapon statute. He was convicted under subsection C, which criminalizes firearm possession without a firearm owner's identification card, and he was convicted under subsection A5. Both of these subsections are unconstitutional, facially unconstitutional under the new test set forth by the United States Supreme Court and New York State Rifle and Pistol Association versus Bruin. For that reason, I am asking this court to find both of those subsections of the aggravated unlawful use of a weapon statute unconstitutional and reverse Mr. Kuykendoll's conviction. Under Bruin, the court no longer applies a means and scrutiny test to Second Amendment challenges. Instead, it applies a two-step test that was set forth in Bruin. The first step of that test asks the question, does the regulated conduct, does the Second Amendment plain text protect the regulated conduct at issue here? If the answer to that question is yes, then you move on to the next step where it becomes the state's burden to justify that the regulation is consistent with our nation's historical tradition of firearm regulation. Neither of the aggravated unlawful use of weapon subsections that Mr. Kuykendoll was convicted under can survive this test. Before we get into that test, however, I do just want to address the two footnotes in Bruin that have caused a lot of confusion throughout Illinois courts and that the state relies on heavily. The state argues that these footnotes expressly endorse the shall issue regime, but this is a misreading. While the United States Supreme Court was very careful to make sure that they were being clear that they were only ruling on the unconstitutionality of the New York's licensing regime, they also made it clear that they weren't ruling other licensing regimes constitutional. In fact, the footnote 9 concludes with, that said, because any permitting scheme can be put toward abusive ends, we do not rule out constitutional challenges to shall issue regimes where, for example, lengthy wait times or exorbitant fees deny ordinary citizens the right to public carry. So the proper analysis is not to take Bruin as a blank check that approves of all shall issue regimes, but instead to apply the Bruin test to those subsections of the aggravated unlawful use of a weapon statute. Because even if the court in Bruin did identify Illinois as a shall issue regime, that does not mean it stands up to constitutional muster under the Bruin test. Applying the Bruin test to both of the subsections yields the same results. These elements of the aggravated unlawful use of weapon statute impermissibly burden ordinary citizens constitutional Second Amendment rights. And not only that, but failure to comply comes with a hefty price. You could be imprisoned for up to three years and you would have a class war felony in your background. So applying the test and starting with step one, we ask ourselves, what is the conduct here that's being regulated? The state argues the conduct is unlicensed gun possession, but that's incorrect. The conduct is simply gun possession. Unlicensed is the manner. So the question is, does the Second Amendment cover gun possession? And we don't need to do a lengthy textual analysis to determine this because the court in Bruin expressly stated that gun possession is covered by the Second Amendment. So therefore, we move on to the next step. And that is when it becomes the state's burden to produce or show that the regulation is the regulation which criminalizes gun possession, unless an individual first acquired licensing, that that is in line with the nation's historical tradition of gun control. And the state cannot do this. And they did not do this. Even the state concedes that licensing regimes were uncommon before the 20th century. The state argues that there were other means of determining fitness that was used at that time. But each of the other means of determining fitness that the state points to are not analogous, are not analogs to the modern day Illinois law because they pertain to felons. They pertain to disarming felons, which here the aggravated unlawful use of a weapon statute criminalizes firearm possession by ordinary citizens if they don't have a license. And indeed, Mr. Kuykendall had no convictions in his background at the time of this event. And I'd like to just briefly address surety statutes because the state also relied on those. So surety statutes are distinct from the aggravated unlawful use of a weapon statute in that they are not punitive. And more importantly, the statute, the surety statutes required a showing that someone was likely to breach the peace where, again, the aggravated unlawful use of a weapon statute applies to ordinary citizens. There's no no showing necessary of any kind of likelihood to cause harm. And there's a reason why the state can't produce these. It's because the history doesn't show that we ever burdened the Second Amendment this way. For example, to acquire a FOIA card, you have to show that you're not a felon. You have to prove that you're not addicted to narcotics. You have to show that you were not a patient in a mental health facility in the past five years. You have to agree to disclose private mental health information upon request. And there are several other requirements, too. So there are quite a few requirements that individuals need to jump through in order to even get a FOIA card. And likewise, the concealed carry license comes with similar hurdles. And the concealed carry license in particular requires a 16-hour safety class in which the instructor has the ability to deny you a certificate of completion based on your following orders. So the certificate of completion is needed to acquire the CCL. So it's quite a few hurdles and they are cumbersome. So in addition to that, there's a $150 FIFA concealed carry license and there's a 90-day waiting period. And you also have to renew it every five years. So there's quite a few hurdles. At this time, I would welcome any questions. All right. Thank you. We will turn it over to the justices now. Justice Cabbs, do you have questions for Ms. Shaheen? Thank you, Justice McBride. Good morning, Ms. Shaheen. Thank you for your argument. Are you suggesting to us that the qualifications or that the, I guess, the issues that you raised about being eligible for a FOIA card rise to such a level that it would render our state a non-shell issue state? I'm suggesting that even if Illinois, I'm not deciding whether the FOIA card or whether the licensing regime is shell issue or may issue because ultimately, even if it was shell issue, it still doesn't pass the Bruin test. Well, doesn't Bruin, especially the two justices who specially concurred, identify Illinois as a shell issue state? They do, but they also did leave room for constitutional challenges to shell issue regimes. And you believe that the factors you raised support a different conclusion than is reached in Bruin as it would apply to other shell issue states? As it applies to our licensing regime specifically. Now, there's been quite a bit of chatter in even in Illinois around Bruin and certainly in the appellate court. Have you had any opportunity to review any of the case law that's developed following Bruin decision here in Illinois? Yes, I did receive Ms. Bond's emergency motion. I'm familiar with People v. Gunn and People v. Smith and People v. Thompson. I think in those cases, the court did not conduct, it never reached the historical step. It looked to footnote nine as an express approval of the licensing regime. And I'm saying that that is the incorrect procedure because Bruin still needs to be applied. But even beyond the footnote, you have two specially concurring justices who are not in a footnote, but especially concurring to clarify what the majority holds. I still would say ultimately when you need to apply the Bruin test, regardless of, because they left room for constitutional challenges to shell issue regimes, I believe that it's important to apply the Bruin test to each specific shell issue regime because they each have their own nuances and idiosyncrasies. So are we moving from a facial challenge to an as applied? No, I'm facially challenging the Illinois subsections of the aggravated unlawful use of weapons statute. All right, I have no further questions. Justice Ellis? Just a couple. Good morning, Ms. Shaheen. Can you hear me okay? Yes. Isn't the point of the licensing scheme in Illinois to ensure that the people who are applying for guns are in fact law abiding responsible citizens? I mean, don't you have to have some system in place to make sure they are in fact law abiding responsible citizens? I think if it passes the historical test, so if there is a historical analog, and again, it doesn't have to be a twin, but it does have to be relevantly similar, then that would be constitutional to burden the Second Amendment in that way. That would render that footnote you've been talking about quite an odd footnote, wouldn't it? I mean, the court was suggesting that in the shell issue states, obviously, yes, somebody could claim to be a shell issue state but go too far. But generally speaking, they seem to go out of their way to express approval for kind of your basic licensure standards. Just background checks, things like that, mental health evaluations, things like that to make sure you're someone who should be allowed to have a gun. If this all falls back on did they do that back in the 1700s or at the time of the 14th Amendment, it would seem like an odd footnote to me if that were the requirement. Right. I mean, how do we square that? I mean, you're saying this is all nice, that footnotes nice, and the concurrence is nice, but you have to go back and establish that this kind of a test was allowed back then. Yes, that is what I'm saying. I think that footnote is the court trying to be very precise in what they're saying is unconstitutional and also what they're saying they're not ruling constitutional. I think ultimately, though, it still needs to pass the historical step. Yeah, I think that has to be your argument. And because it's a facial challenge, you have to show that there is no application of this that would be constitutional. Correct, yes. So what if, I mean, one of the things you focused on, I think because it appears to give some discretion, is the idea that the instructor can issue orders and you have to comply with the order, right? Right. Well, what if somebody, I mean, if it's a facial challenge, couldn't there be situations where that did not become a problem? Theoretically, it might, but with a facial challenge, you have to say there's no way this could be constitutional. I mean, couldn't you have somebody who applied, did follow the orders, had no problem with the instructor, and got their license? No, because that would still be an impermissible burden on the Second Amendment. And I think the safety courses are informative because they show how it's important for each shall issue regime or each licensing regime, regardless of how it's defined, needs to be looked at in particular, because we don't really know the nuances of what goes into those classes. So I think it's always an impermissible burden on the Second Amendment, which is criminalized in the aggravated unlawful use of weapons statute. So in every application, it is unconstitutional. All right, thank you. I have a question or two. So, under the statute, not the commercial or the CCL, the void, is one of the requirements that you can't have a felony conviction? One of the requirements, yes. All right. And so I think going a little further on Justice Ellis's question, under the statute then, and I think with the historical perspective in mind, is it your understanding that felons didn't have the right to bear arms or is that out too? I wouldn't go so far to say that that would be justified. It's not what we have before us here, because here it's the ordinary citizens who are being burdened. But isn't one of the burdens in getting the void card that you have to not have a felony conviction? And so that part of the statute, would that mean that part of the statute wouldn't be unconstitutional and therefore could be applied or it's not unconstitutional because of that? If it passes constitutional muster through the Bruin test, then it would be constitutional. So, if there's a historical tradition of disarming felons that... Yeah, so if that part of the statute is constitutional, then you can't have your claim, can you? There's a circumstance under which it's constitutional. I'm saying subsection C, which is the subsection that criminalizes firearm possession without a void card and subsection A5, which criminalizes firearm possession without a CCL are unconstitutional. I'm not making any claims about the felony or minors or anything like that. No, I understand that. But I'm just saying that in some ways, if this can be applied against a felon, then don't you lose your argument? You have to show there can be no circumstance under which. Isn't that right? There's no circumstance under which a subsection C and subsection A5 can be applied where it's constitutional. Okay. And also, did you put forth anything in your brief about the historical situation that we're looking at or what it would be? Do you have anything about that? In my opening brief, I went through a historical analysis. Is your question if I... What actually is the historical analysis that tells us that firearms or assault weapons or anything else historically were all allowed back then? Or what is the basis of your premise about history and what we're supposed to be looking at? I think Bruin is really helpful on that point. They went into the idea that not all history is created equal. I believe the two time periods are 1791 and 1868. And I think there... I know I cited to some treatises. There are treatises back then that are helpful to determine attitudes. There's, you know, looking to the surety laws that, of course, I said, of course, all of my arguments are none of the historical stuff I cited is an adequate analog. So then what are we supposed to do? So you look to the... You look to primarily 1791 and 1868 and the laws and the attitudes around gun regulation at that time. Did I read in one of the previous cases, I'm not able to cite it now, but wasn't at the common law, wasn't there a law that only the sheriffs could possess weapons and that ordinary citizens as such could not? I didn't come across that. I apologize. I know I've read it in one of the cases somewhere along the line. All right. Well, anyway, I'm not sure I grasp what this historical perspective is and what tells us that handguns or any kind of firearm was something that people were walking around carrying wherever they went. I mean, what is the basis for us to look at the historical perspective? So I think the Bruin Court, you know, one of the things they stated was what we're looking for are laws, attitudes that are relevantly similar to whatever the modern regulation is. Yeah. And what would those laws be then that you would rely on from the 1768 period or seven? I forget what year. And then you mentioned 1868. It's my position that it would need to be a very similar law licensing prohibiting. It would need to be a criminal statute prohibiting firearm possession without certain licenses. And what statutes or what are you what are you telling us we should look to to know that that's actually the case? I'm looking to Bruin, which. I think I think, you know, looking at Bruin and looking at the discussion of the historic history shows that they they were trying to be true to the founders. I think they felt that that was significant in so that we don't embrace outliers. I think that was their main concern. So that goes back to making sure that the analog is relevantly similar. So it can't it can't have, you know, if it has characteristics that are similar, but not relevant, then it wouldn't it wouldn't be a proper analog. All right. You know, and then back if we're looking back in time, were certain people or classes of people not allowed to carry guns? Yes. And were they who were they? I believe they there were some besides felons. Yes, I believe there were some discriminatory laws discriminating based on race, saying that black Americans couldn't buy firearms. So that was one, I think, were women allowed to have them? I am not sure about that. Blacks were not. That was one of the discriminatory practices. Correct. Yes. In history. Okay. All right. Well, I don't have any other questions. Do either of the justices before we turn it over to Ms. Bond? All right. Thank you. And we'll give you some time for rebuttal. Thank you. All right. Ms. Bond, you may proceed. Thank you. And good morning. Again, may it please the court, Assistant State's Attorney Whitney Bond on behalf of the people. Simply put, Bruin allows Illinois shall issue licensing regime. Bruin expressly endorsed licensing requirements and shall issue jurisdictions like Illinois. Because our requirements don't prevent law abiding and responsible citizens from exercising their Second Amendment rights to possess and carry a fire. Bruin's endorsement of Illinois licensing regime is enough for this court to reject defendants' facial challenge to the FOID requirement of the aggravated unlawful use of a weapon statute. We don't need to conduct a fulsome Second Amendment analysis when Bruin has already explicitly held that statutes like our Illinois FOID and CCL statutes comport with both the Second and Fourteenth Amendments. Of note on this very point is a very recent decision from the First District of People v. Gunn. There, the defendant similarly argued that the FOID card was facially unconstitutional pursuant to Bruin because, he argues, the Second Amendment does not permit any kind of restriction on the right to bear arms. First District and Gunn rejected this argument without conducting the two-part test outlined in Bruin, finding that Bruin had already recognized the constitutionality of Illinois' FOID and CCL statutes because they are shall issue licensing regimes. In other words, if a person in Illinois seeks an FOID and a CCL, all they need to do is follow the requirements set out in the statutes and they shall be issued that documentation to possess and carry. Thus, Gunn supports the people's argument here that Bruin's endorsement of our shall issue licensing regime, like 42 other states in this nation, that alone for this court can reject the defendant's challenge. As Gunn explicitly held, there's no reason to believe that the Supreme Court intended to invalidate the type of firearm regulation employed by Illinois. To the contrary, the Gunn court noted that Bruin explicitly acknowledged that background checks, which are the cornerstone of our FOID card act, are permissible. And Gunn was rightly decided where Bruin made it clear that nothing in their opinion should be interpreted to suggest that shall issue licensing regimes are unconstitutional. As regimes like ours do not require applicants to show an atypical need for armed self-defense, which is the genesis of this case in New York, which employed a may issue licensing regime. Thus, shall issue licensing regimes like ours don't prevent law-abiding responsible citizens from exercising their Second Amendment rights to bear arms. The FOID and CCL statutes are facially constitutional, and there's no need for us to even get into the historical analysis of firearm regulation. Because, frankly put, the United States in Bruin had the opportunity to denounce states' gun regulation schemes outright, and they didn't do that. The court explicitly acknowledged that shall issue regimes like Illinois, which are aimed at ensuring that only law-abiding citizens are allowed to possess and carry firearms, do not prevent citizens from exercising their Second Amendment rights. This is simple. In sum, based on the foregoing and this court's case law, this court can hold that Illinois' FOID card act complies with the federal law and thus affirm defendant's conviction here. I'm open for questions. All right. Thank you, Ms. Bond. Justice Cobbs? Thank you. Thank you, Justice McBride. Good morning, Ms. Bond. Good morning. You raise a standing issue in your brief. Can you just briefly address why you believe there is no standing? At this point, I believe there is standing. So, what's interesting about this Bruin case, as Justice McBride touched upon it, is that it is so relatively new within the court system. I mean, we're still wrestling with it at the trial level, at this level. I think when we first are starting to kind of wrap our hands around this type of issue, we really weren't sure which direction we were going to go. And so, as Gunn has come out and Smith and Thompson, I think a lot of things within our own office are changing on how to address it with something as straightforward as a facial constitutional challenge. So, at this point, this defendant is raising the issue of whether or not the FOIA requirement within the UUW statute is facially constitutional or not. As it applies to him, then at this point, yes, he would have standing to bring this to this court, because this is the next step for him in this, you know, as we're trying to discuss Bruin and what it means for Illinois and shall issue licensing regimes. Now, I want to be clear, because I did not understand Ms. Shaheen to argue that they were bringing an as-applied claim. They are not. They are bringing a facial, facially unconstitutional, as it applies to everybody that would be seeking a FOIA card. Okay, I'm clear. And so, the state now concedes standing? At this point, yes, but not going forward. There might be arguments that are coming down that change that argument. All right, but not in this case? No. Now, can you address some of Ms. Shaheen's issues? She spends a lot, a good deal of her argument, even in the brief, on this historical perspective, although it's not particularly or it's not set forth in as much detail as the court does in Bruin. But can you address her argument with respect to the historical perspective and why should we be looking there when the Supreme Court has already done that and pretty much given the shall issue states seemingly a pass, not an absolute pass, but a pass? And I think why they did that is because, in terms of your question about why they're giving a shall issue state a pass, it's because the issue in Bruin was that there was too much government control in terms of who, if you did some of the requirements, you still may not get the FOIA card that you were seeking or New York's equivalent. So what the Supreme Court did was, say, laid out exactly why, historically, may issue regimes are not constitutional, but said, we applied this historical analysis to may issue regimes, and then the shall issue, if you abide by the requirements that are required by your state, you will get the documentation that you were seeking. So I think they carved out that to make it easier for courts to look at down the road that you don't need to get into historical analogs or historical analogies. A lot of case laws are using those interchangeably. And Bruin wanted to do away with that issue for those 43 states that are considered shall issue. Because I think when wrestling, like I said, when wrestling with this case and kind of looking at Bruin, I think it would be difficult to apply all the modern wrinkles. Because when you're looking back to 1791 and 1868, I don't think at those times, we were talking about what felons were, and we weren't talking about what domestic abusers were like then. What's the historical analog to those things? Like the issues that are modern today, I think, are going to have a really hard time finding a historical analog. Obviously, it doesn't have to be a historical twin, but modern problems that we face and courts face today are going to have a tough time finding similar historical treatises. And because of that, they recognize that if this is a shall issue regime, then as long as the person can prove that they are law-abiding and responsible citizen, and that is by living up to the requirements that each state requires, they shall be issued. And that is not against the Second Amendment. Ms. Shaheen seemed to suggest that the requirements for Floyd would somewhat take this out of the shall issue and make it cumbersome or even more burdensome, and therefore it shouldn't enjoy the protections of some of the language, the shall issue language in Bruin. Can you think of a scenario, can you think of, well, just in thinking of in terms of the factors required now or the elements required in the statute now to be issued a Floyd? Is any of that or is there any case law even around outside of Illinois that would suggest that some of these factors border upon being overly cumbersome such that they would offend Second Amendment rights? As far as Illinois' Floyd, I don't, I can't foresee an issue where as long as you're not a felon, you're mentally fit, you wait the required time and you pay the required fees. I can't understand, or I can't foresee an issue where that would be problematic under the Second Amendment. There's simply, I mean, throughout history, we're talking about, you know, people being subject to firearm restrictions. And so I don't believe that what Illinois is requiring in this shall issue regime would be problematic to anyone. I have nothing else. Justice Ellis? Yeah, just a couple questions. Good morning, Ms. Vaughn, how are you? Good morning, sir. So as I understand the footnote, this important footnote, the court was generally saying if you have basic definitive criteria, not opinions, not, you know, not discretion, but narrow objective definite standards, you're probably going to be okay. We don't mean to call into doubt those statutes, but we, they also said, of course, some statute could purport to be just those things, but in fact go too far. Such as exorbitant fees that would prevent an ordinary citizen from getting a gun or process lengthy wait times, right, in processing applications so that you have to wait like two years to get a gun. So if every time somebody challenges one of these 43 statutes around the country, if all the court does is say, we're in that footnote, we're good. How is anyone going to get past that and say, yeah, but this one has some feature that goes too far? And once you do do that, I'm sorry, I kind of invited an answer and I kept talking, I apologize, but, and if, you know, when are we going to know when that moment has come? And if it does come, what do we do? Do we then have to go through the whole Bruin historical analysis? If somebody were to challenge for your analogy, if somebody were to challenge, say there's a two year waiting period and just can't reach the fees. But I feel like that would be a challenge specifically to those factors to that Floyd or the equivalent and on its face. And that then you would probably have to do the historical analysis. Because that is outside the protection of the Second Amendment, or excuse me, within the protection of the Second Amendment, because somebody is seeking to possess a firearm and that the hurdles, so to speak, that they have to jump would be just too high. I think that would be right for an historical analogy and going back to seeing like what was the requirements under the Second Amendment, what constitute, I know that Heller decoupled the well regulated militia from the right to bear arms. But what type of arms were they talking about then at that time? And what was the process of which to get them? But what we don't have that. Oh, excuse me. I think you're asking, we don't have that situation here, but your consultant counsel says that we do. She says some of this stuff goes too far, I think, especially on the CCL with the discretion of the instructor or what have you. So is our job to first determine whether whatever it is we do in our FOIA Act and our CCL Act, stay within the confines of this footnote, the narrow objective definite standards. And if they do, then you win. It's time to unlock the ruin historical analysis. Is that how we're supposed to proceed here? Yes, and I think what we can talk about is that it's not the people's position that the CCL with the range, the 16 hours, and then that's signed off on. That's not must or may issue. People contend that as long as that person is following the correct orders, which we would want them to, and a law abiding responsible citizen would also want to, and that if you can check, it's probably similar to a driver's test. If you can do X, Y, and Z things, then you pass. And so if you can do X, Y, and Z, follow these orders, then it's issued to you under the CCL. So this isn't still a may issue. The court doesn't need to unpack whether or not that is cumbersome or burdensome because that's not what we're arguing about here. And in general, it's not what we're arguing about. It is both here and going forward that that part of the requirements of the CCL statute is still almost just the same as everything else that needs to be done. In order to possess and carry, you have to follow these requirements, and that's what Illinois is given to its citizens. Because if you are law abiding and responsible, then you'll follow these requirements and you will be issued a FOID card and a CCL. All right. Thank you very much. I don't have any questions at this time. Any further questions, Justice Cobbs? No. Thank you, Justice McFly. All right. Ms. Shaheen, you can have a couple of minutes for rebuttal. Thank you. So I just want to address, again, footnote nine, causing a lot of confusion. I think it's really important to realize this shall issue regimes were not before the Supreme Court in Bruin. So they didn't get a chance to really go into that. And I think with footnote nine, they wanted to be, again, they wanted to be very precise with their ruling. So I think it comports with the whole ruling because that was the significance of footnote nine. They were trying to be precise about what they were saying was constitutional and what they weren't saying was constitutional. And the issue is that it's I obviously I disagree with the state's position that we first check to see if the regulation is narrow and definite. That's not the test that Bruin gave us. The test that Bruin gave us is to apply the first step is the conduct regulated by is protected by the Second Amendment and move on to the historical analysis, which is the state's burden. The state cannot produce that burden here. And I would just say the question isn't approaching this from the angle of workability is not the Bruin test. The Bruin test asks us to find a historical analog. And while it may sometimes while that may not always feel comfortable, that is what the United States Supreme Court has asked of us in Bruin. And for that reason, I think that I would ask this court to find the subsection C and subsection A5 of the aggravated unlawful use of weapons statute unconstitutional and overturn Mr. Kuykendall's convictions. Thank you. All right. Any other questions to Ms. Shaheen by the other justices? No, thank you. All right. And I have no questions. So thank you both for the oral arguments today. The matter will be taken under advisement and we are adjourned on this matter. Thank you. All right.